IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TONY PHAT NGOC NGUYEN,

       Plaintiff,

  v.

WELLS FARGO BANK, N.A. et al.,

       Defendants.

_____/

No. C-10-4081-EDL

**AMENDED ORDER DENYING MOTION TO REMAND; DENYING MOTION FOR SANCTIONS; GRANTING MOTION TO DISMISS; DENYING MOTION TO STRIKE AS MOOT**

    **This Order is hereby AMENDED to correct a typographical error in the Court's October 25, 2010 Order wherein the Court mistakenly identified Wells Fargo Bank, N.A.'s main office as being located in North Dakota, as opposed to South Dakota where the evidence shows that its main office is actually located.  The Order remains unchanged from the previous version in all other respects.**

**I.     Introduction**

    On August 6, 2010, Plaintiff Tony Phat Ngoc Nguyen filed a complaint in Contra Costa County Superior Court against Defendants Wells Fargo Bank, N.A. (also known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A.M. and formerly known as Wachovia Mortgage FSB, formerly known as World Savings Bank, FSB) ("Wells Fargo") and Executive Trustee Services, LLC ("ETS") alleging wrongful foreclosure, violation of California Civil Code § 2923.5 and 2924, fraudulent misrepresentation, fraudulent concealment, conspiracy to defraud, unconscionability, quiet title, violation of California Business & Professions Code § 17200, conversion, and declaratory and injunctive relief.  Wells Fargo filed a notice of removal to federal court on September 10, 2010 based on diversity jurisdiction, and ETS consented to and joined in the

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   removal.  On September 17, 2010, Wells Fargo filed a motion to dismiss all claims and to strike the

2   punitive damages and other allegations.  On September 28, 2010, Plaintiff filed a motion to remand

3   and motion for sanctions.  The Court elected to hear all four motions together on October 26, 2010.

4   The Court now finds that all four motions are appropriate for resolution without the need for oral

5   argument, and hereby Orders as follows:  Plaintiff's motion to remand and motion for sanctions are

6   DENIED. Wells Fargo's motion to dismiss is GRANTED.  Wells Fargo's motion to strike is

7   DENIED AS MOOT.

8   **II.     Requests for Judicial Notice**

9          In support of its motion to dismiss, Wells Fargo filed a request for judicial notice of various

10  publicly filed documents.  See Wells Fargo's RJN. Exs. A-N.  When considering a motion to

11  dismiss, a court does not normally look beyond the complaint in order to avoid converting a motion

12  to dismiss into a motion for summary judgment.  See Mack v. South Bay Beer Distributors, 798 F.2d

13  1279, 1282 (9th Cir. 1986), overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v.

14  Solimino, 501 U.S. 104 (1991).  The two exceptions to this rule are: 1) the court may properly take

15  judicial notice of material which is included as part of the complaint or relied upon by the complaint;

16  and 2) the court may properly take judicial notice of matters in the public record. See Lee v. City of

17  Los Angeles, 250 F.3d 668, 688-69 (9th Cir. 2001).  Under Federal Rule of Civil Procedure 201(b),

18  a "judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1)

19  generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and

20  ready determination by resort to sources whose accuracy cannot reasonably be questioned."

21  Furthermore, a court "shall take judicial notice if requested by a party and supplied with the

22  necessary information."  See Fed. R. Civ. P. 201(d); Mullis v. United States Bank, 828 F.2d 1385,

23  1388 n.9 (9th Cir. 1987).  Here, Plaintiff does not challenge the authenticity of the documents

24  contained in Wells Fargo's Request for Judicial Notice, and they are judicially noticeable under

25  Federal Rule of Evidence 201.  Plaintiff has also filed a request for judicial notice in connection with

26  his motion to remand and reply in support thereof.  Wells Fargo does not challenge the authenticity

27  of the documents contained in Plaintiff's Requests for Judicial Notice, and they are judicially

28  noticeable as well.  Therefore, to the extent necessary to rule on the pending motions, the Court has

1    considered the parties' judicially noticeable exhibits.

2    **III.   Facts**

3          On or about June 12, 2006, Plaintiff and World Savings Bank executed a 30-year adjustable

4    rate home refinance loan of $712,000.00 secured by a deed of trust on his property.  Compl. ¶¶ 13-

5    14.  Plaintiff made payments of an undetermined amount from approximately July 15, 2006 through

6    September 2008.  Id. ¶ 16.  Beginning in 2008, Plaintiff attempted to obtain a loan modification,

7    payment abatements or other means to avoid foreclosure without success.  Id. ¶ 16.  On December 5,

8    2008, Wachovia Mortgage, FSB, f.k.a. World Savings Bank executed a substitution of trustee

9    making ETS the trustee under the deed of trust.  Id. ¶ 17.  On December 19, 2008, ETS recorded a

10   notice of default and election to sell under the deed of trust, claiming that Plaintiff was in arrears on

11   his mortgage payments in the amount of $17,205.85.  Id. ¶ 18.  On July 22, 2009, ETS executed and

12   recorded a notice of trustee's sale with sale date of January 8, 2010, though no sale has yet occurred.

13   Id. ¶¶ 19-20.  On May 27, 2009, Plaintiff filed Chapter 7 bankruptcy and the property was made

14   part of the bankruptcy estate.  Id. ¶ 20; but see Wells Fargo's RJN, Ex. H (bankruptcy filing was on

15   May 12, 2010).

16         Plaintiff's complaint makes ten claims which allege three basic categories of wrongdoing by

17   Defendants.  First, Plaintiff claims that there have been improprieties in the beneficiary and trustee

18   assignments and/or substitutions (including an improper severance of the deed of trust and the

19   promissory note) such that no Defendant is currently properly appointed or authorized to foreclose

20   on his property.  Compl. ¶¶ 22-28 (Claim 1 for wrongful foreclosure); ¶¶ 81-83 (Claim 7 for quiet

21   title); ¶¶ 85-87 (Claim 8 for violation of § 17200); ¶¶ 90-91 (Claim 9 for conversion); ¶¶ 93-98

22   (Claim 10 for declaratory and injunctive relief).  Plaintiff also claims that Defendants failed to

23   comply with California's pre-foreclosure statutory requirements so the foreclosure is invalid.  Id. ¶¶

24   31-37 (Claim 2 for violation of Civil Code § 2923.5 and 2924); ¶¶ 57-66 (Claim 5 for conspiracy);

25   ¶¶ 85-87 (Claim 8 for violation of § 17200); ¶¶ 90-91 (Claim 9 for conversion); ¶¶ 93-98 (Claim 10

26   for declaratory and injunctive relief).  Finally, Plaintiff alleges various improprieties and

27   misrepresentations during the origination of his mortgage.  Id. ¶¶ 40-50 (Claim 3 for fraudulent

28   misrepresentation); ¶¶ 52-55 (Claim 4 for fraudulent concealment); ¶¶ 57-66 (Claim 5 for

**United States District Court**
For the Northern District of California

conspiracy); ¶ 69-78 (Claim 6 for unconscionability); ¶¶ 85-87 (Claim 8 for violation of § 17200);

¶¶ 90-91 (Claim 9 for conversion); ¶¶ 93-98 (Claim 10 for declaratory and injunctive relief).

**IV.   Plaintiff's Motion to Remand and for Sanctions**

Wells Fargo removed this action on the basis of diversity of citizenship, claiming that it is a

citizen of **South** Dakota and therefore complete diversity exists.[1]  Plaintiff now moves to remand on

the basis that both Plaintiff and Wells Fargo are citizens of California, and that Defendants cannot

show that the jurisdictional minimum of $75,000 has been met.

**A.      Legal Standard**

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a

State court of which the district courts of the United States have original jurisdiction, may be

removed by the defendant or the defendants, to the district court of the United States for the district

and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  "If at any

time before final judgment, it appears that the district court lacks subject matter jurisdiction, the case

shall be remanded."  28 U.S.C. § 1447(c).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction."  Gaus

v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted).  Thus, "[f]ederal jurisdiction

must be rejected if there is any doubt as to the right of removal in the first instance."  Id. (citation

omitted).  "The 'strong presumption' against removal jurisdiction means that the defendant always

has the burden of establishing that removal is proper."  Id.; see also Abrego v. Dow Chemical Co.,

443 F.3d 676, 685 (9th Cir. 2006).  Removal jurisdiction may be based on diversity of citizenship or

on the existence of a federal question.  28 U.S.C. § 1441.  Whether removal jurisdiction exists must

be determined by reference to the well-pleaded complaint.  Merrell Dow Pharmaceuticals, Inc. v.

Thompson, 478 U.S. 804, 808 (1986).

**B.      Discussion**

The Complaint alleges that Plaintiff is a citizen of California.  Compl. ¶ 1.  The Complaint

---

[1] The notice of removal does not mention the citizenship of ETS, and it is not the focus of either party's arguments.  Plaintiff "assum[es] for the sake of argument that ETS could be a citizen of Delaware" and relies entirely on Wells Fargo's citizenship for its remand arguments.  Motion at 5.  ETS contends that its citizenship is to be ignored for purposes of diversity because it is an uncontested nominal defendant.  ETS' Opp. to Motion for Sanctions at 3; see also Dkt. # 9.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   further alleges that "Wells Fargo Bank, N.A., also known as Wachovia Mortgage, a division of

2   Wells Fargo Bank, NAM and formerly known as Wachovia Mortgage, FSB, formerly known as

3   World Savings Bank, FSB" was a Delaware corporation using a business address in Contra Costa

4   County, California.  Id. ¶ 2.  It also alleges that ETS has a business address and was doing business

5   in California.  Id. ¶ 5.  Plaintiff argues that the face of the complaint makes no allegations about the

6   corporate headquarters or principal place of business of either defendant, and that Wells Fargo's

7   contention in the notice of removal that it is a citizen of **South** Dakota for purposes of diversity is

8   false and sanctionable.  Plaintiff also argues that the jurisdictional minimum has not been met.  The

9   Court rejects these arguments.

10              **1.      Wells Fargo's Citizenship**

11          In support of his position on diversity, Plaintiff relies on "Wells Fargo & Company"'s by-laws,

12   which state that its principal place of business is San Francisco.  Moore Decl. Ex. E at 2.

13   Additionally, Wells Fargo & Company's 2008 Annual Report states that its corporate headquarters

14   remain in San Francisco, and its 2009 annual meeting was held in San Francisco.  Moore Decl. Ex.

15   B at 5; Ex. E.  Wells Fargo does not challenge the authenticity of the documents relied on by

16   Plaintiff, but points out that they relate only to its parent company, Wells Fargo & Company, which

17   is not a party to this lawsuit.  Wells Fargo relies on its public profile on the FDIC website, which

18   lists its main office in South Dakota, as well as its history on the same website.  See Wells Fargo's

19   RJN in Opposition to Remand at Ex. A; Ex. C to Notice of Removal.

20          Pursuant to 28 U.S.C. § 1348, all national banking associations are "deemed citizens of the

21   States in which they are respectively located."  Unlike § 1332, § 1348 does not state that a national

22   banking association "shall be deemed to be a citizen of any State . . . where it has its principal place

23   of business. . . ." 28 U.S.C. § 1332(c)(1).  The Supreme Court has interpreted this to mean that a

24   national banking association is a citizen of the state where its articles of association designate its

25   "main office."  See Schmidt v. Wachovia Bank, N.A., 546 U.S. 303, 313-314 (2006).  In footnote

26   nine of its decision, the Supreme Court stated:

27              To achieve complete parity with state banks and other state-incorporated
                entities, a national banking association would have to be deemed a citizen of
28              both the State of its main office and the State of its principal place of business.
                See Horton v. Bank One, N.A., 287 F.3d 426, 431, and n. 26 (5th Cir.2004) ;

> Firstar Bank, N.A. v. Faul, 253 F.3d 982, 993-994 (7th Cir.2001). Congress has prescribed that a corporation "shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1) (emphasis added). The counterpart provision for national banking associations, 1348, however, does not refer to "principal place of business"; it simply deems such associations "citizens of the States in which they are respectively located." The absence of a "principal place of business" reference in § 1348 may be of scant practical significance for, in almost every case, as in this one, the location of a national bank's main office and of its principal place of business coincide.

Schmidt, 546 U.S. at n. 9.  Following Schmidt, numerous courts have found that a national banking association's citizenship is the place where its "main office" is designated, as opposed to its principal place of business.  See e.g., Hicklin Engineering L.C. v. Bartell, 439 F.3d 346, 348 (7th Cir. 2006); see also Lowdermilk v. U.S.Bank, N.A., 479 F.3d 994, 997 (9th Cir. 2007) (determining national bank's citizenship based on location of main office, citing Schmidt); Peralta v. Countrywide Home Loans, Inc., 2009 WL 3837235, *4-5 (N.D.Cal. 2009) (relying on other district court's thorough analysis of the Supreme Court's language in note 9 and the relevant legislative history of § 1348 to find that "for purposes of diversity jurisdiction, a national bank is a citizen of the state in which its main office is located as specified in its articles of association" as opposed to its principal place of business).

In his Reply, Plaintiff argues that there is a split of authority among the district courts of the Ninth Circuit on this issue, relying on Mount v. Wells Fargo Bank, N.A., 2008 WL 5046286, *2 (C.D. Cal. 2008), where the court found that a national bank is a citizen of the state of both its principal place of business and the state in which its main office is located.  Plaintiff contends that, under this view, Wells Fargo, N.A. is a citizen of California.  However, the only cases citing Mount have disagreed with it because it relies on cases that predate Schmidt and is inconsistent with that decision.  See Peralta v. Countrywide Home Loans, Inc., 2009 WL 3837235, *4 -5; Deleon v. Wells Fargo Bank, N.A., 2010 U.S.Dist. LEXIS 62499, *7 (N.D. Cal. 2010); Wells Fargo Bank, N.A. v. WMR e-Pin, LLC, 2008 WL 5429134, *1 (D.Minn. 2008) ("the Court concludes that Wells Fargo Bank does not take the citizenship of the state of its principal place of

1   business.  Because Wells Fargo Bank is not a citizen of California, the Court rejects

2   Respondents' assertion that complete diversity of citizenship does not exist.").  The Court

3   agrees with the decisions that discount <u>Mount</u> as relying on outdated authority, and holds

4   that under § 1348 and <u>Schmidt</u>, Wells Fargo is a citizen of the state in which it has

5   designated its "main office."

6          In this case, judicially noticeable documents establish that Wells Fargo is a citizen

7   of **South** Dakota, not California.  <u>See</u> Wells Fargo's RJN Ex. A (FDIC website stating that

8   Wells Fargo, N.A.'s main office is located in South Dakota).  Plaintiff argues that Wells

9   Fargo has not attached its articles of association designating South Dakota as its main

10  office, as required by <u>Schmidt</u>.  However, Plaintiff's evidence on reply does nothing to

11  negate Wells Fargo's evidence that its main office is in South Dakota, and in fact confirms

12  this conclusion.  Plaintiff proffers Wells Fargo's SEC "13-F" filings, which list the bank's

13  business and mailing address in South Dakota, though the documents were signed in San

14  Francisco.  <u>See</u> Pl.'s Reply RJN Exs. 1, 2 (2004-2010 13-F forms list South Dakota as the

15  business and mailing address; 2000 13-F form lists San Francisco as the business address).

16  Plaintiff also relies on Wells Fargo & Company's 2009 Form 10-K list of properties,

17  which states that Wells Fargo & Company "own[s its] corporate headquarters building in

18  San Francisco, California."  <u>See id</u>. Ex. 3.  However, Wells Fargo & Company is not a

19  named defendant, and this statement in its 10-K does not shed light on the location of

20  Wells Fargo, N.A.'s main office.  Based on the evidence provided to the Court, Wells

21  Fargo is a citizen of South Dakota for purposes of diversity.  <u>See also Deleon v. Wells</u>

22  <u>Fargo Bank, N.A.</u>, 2010 U.S.Dist. LEXIS 62499, *7 (N.D.Cal. 2010) (rejecting principal

23  place of business test for banking associations and finding that Wells Fargo is not a citizen

24  of California); <u>California ex rel. Bates v. Mortgage Electronic Registration Systems, Inc.</u>,

25  2010 WL 2889061, *1 (E.D.Cal. 2010) ("Wells Fargo is a citizen of South Dakota," not

26  California).  Since Plaintiff does not claim that ETS is a citizen of California for purposes

27  of diversity, there is complete diversity and remand is not appropriate on this basis.

28          **2.      Amount In Controversy**

1    Plaintiff also contends that the amount in controversy cannot be determined but is

2  estimated to be less than $75,000.  He argues that the amount in controversy for the

3  wrongful foreclosure claim is the unspecified loss of equity in his house, not the full

4  $712,000 mortgage amount, and that the damages on the other claim are unspecified and

5  punitive damages are speculative.  If the amount of the plaintiff's damages are unclear

6  from the complaint, the  Defendant must set forth in the removal petition the underlying

7  facts supporting jurisdiction and show by a preponderance of the evidence that the

8  jurisdictional threshold has been met.  <u>Sanchez v. Monumental Life Ins. Co.</u>, 102 F. 3d 398

9  , 403-04 (9th Cir. 1996).   The Defendant must prove that more likely than not the amount

10  in controversy exceeds $75,000.  <u>See Gaus</u>, 980 F.2d at 567; <u>Sanchez</u>, 102 F.3d at 404.

11    Wells Fargo argues that the Complaint seeks to quiet title by cancelling the deed of

12  trust and note on the property and seeks rescission of the $712,000 loan.  Compl. ¶ 82-83,

13  Prayer ¶ 12.   Numerous courts have held that, where a complaint seeks to invalidate a loan

14  secured by a deed of trust, the amount in controversy is the loan amount.  <u>See, e.g.,</u>

15  <u>Cabriales v. Aurora Loan</u>, 2010 U.S.Dist. LEXIS 24726, *9-10 (N.D.Cal. 2010) (also

16  taking into account claim of unspecified punitive damages); <u>Craver v. National City Bank</u>,

17  2009 U.S.Dist. LEXIS 98333, *3 (E.D.Cal. 2009).  Plaintiff argues that there is a split of

18  authority among the courts of this district as to how to value foreclosure claims such as

19  his, relying on <u>Reyes v. Wells Fargo Bank, N.A.</u>, 2010 WL 2629785, *5 -6 (N.D.Cal.

20  2010) (Spero, J.).  <u>Reyes</u> did note that "some district courts in the Ninth Circuit have relied

21  on the amount of indebtedness in foreclosure cases, <u>see, e.g., Henderson</u>, 2008 WL 302374

22  at *1; <u>Garcia</u>, 2010 WL 1658569 at *2, while others have looked to the fair market value

23  of the property to determine whether the amount-in-controversy requirement is met. <u>See,</u>

24  <u>e.g., Delgado</u>, 2009 WL 4163525 at *6 (holding that defendants had met their burden

25  regarding the amount in controversy by submitting an affidavit claiming that an appraisal

26  of the property exceeded $75,000.00.)."  However, in <u>Reyes</u>, the court determined that it

27  need not decide which valuation method to use because under either test the amount in

28  controversy was above the statutory minimum.  <u>Id.</u> (amount of debt was $460,946.68 and

United States District Court
For the Northern District of California

trustee's sale was for $220,000).

In this case, the amount of the loan is approximately $712, 000, the notice of trustee's sale lists the total amount owed as $822,319 (see Well's Fargo's RJN in support of Motion to Dismiss at Ex. G), and Plaintiff's bankruptcy petition lists the value of the property at $450,000 (see id. Ex. I, Schedule D).  Given the large amount of the loan in question and Plaintiff's own valuation of the property, as well as Plaintiff's claims for general, compensatory, special, statutory, exemplary, treble and punitive damages as well as injunctive relief and rescission, the statutory minimum has been met.

For the foregoing reasons, there is diversity jurisdiction and Plaintiff's Motion for remand is DENIED.

### C.    Plaintiff's Motion for Sanctions

In conjunction with his Motion to Remand, Plaintiff also moves for attorneys fees pursuant to 28 U.S.C. § 1447(c) and Rule 11 sanctions against both defendants, claiming that the removal was frivolous and done in bad faith.  However, because the removal was meritorious, this motion is DENIED.[2]

## V.    Defendant's Motion to Dismiss

Wells Fargo has filed a motion to dismiss each of Plaintiff's ten claims on grounds that they are time-barred, preempted by federal law, improperly pled, and/or otherwise not viable.   For the following reasons, the Court GRANTS Wells Fargo's motion.

### A.    Legal Standard

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)).

---

[2]ETS did not file a separate opposition to the remand motion but did so for the sanctions motion. In its opposition, ETS contends that the motion is procedurally improper because it does not comply with the mandatory Rule 11 safe-harbor provision, which requires that sanctions motions be served 21 days before they are filed.  Instead, it was served the same day it was filed and therefore no Rule 11 sanctions can be awarded.  See Dkt. #20 (certificate of service showing service on same day as filing). Wells Fargo also opposes the sanctions motion on  procedural grounds. Because Plaintiff did not abide by the safe harbor provision of Rule 11, the motion is denied for this additional reason.

United States District Court
For the Northern District of California

1   The reviewing court's "inquiry is limited to the allegations in the complaint, which are

2   accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch

3   LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008). A court need not, however, accept as

4   true the complaint's "legal conclusions." Iqbal, 129 S. Ct. at 1949. "While legal

5   conclusions can provide the framework of a complaint, they must be supported by factual

6   allegations." Id. at 1950. Thus, a reviewing court may begin "by identifying pleadings

7   that, because they are no more than conclusions, are not entitled to the assumption of

8   truth." Id.

9        Courts must then determine whether the factual allegations in the complaint

10  "plausibly give rise to an entitlement of relief." Id. Though the plausibility inquiry "is not

11  akin to a probability requirement," a complaint will not survive a motion to dismiss if its

12  factual allegations "do not permit the court to infer more than the mere possibility of

13  misconduct . . . ." Id. at 1949 (internal quotation marks omitted) & 1950. That is to say,

14  plaintiffs must "nudge[] their claims across the line from conceivable to plausible."

15  Twombly, 550 U.S. at 570.

16       **B.      Discussion**

17            **1.      Judicial Estoppel Applies to the Case As a Whole**

18       Wells Fargo contends that Plaintiff is judicially estopped from pursuing any of his

19  claims because he failed to adequately disclose them in his bankruptcy proceeding.

20  Plaintiff filed for bankruptcy on May 12, 2010 and received a discharge on August 17,

21  2010. Wells Fargo's RJN Exs. H, J. In his "Schedule D," he listed World Savings and

22  ETS as creditors holding a secured claim but did not indicate that the claim was disputed.

23  Id. Ex. I at Schedule D. He also did not list his claims based on the mortgage in Schedule

24  B, which asks about "counterclaims of the debtor and rights to set off claims" and "other

25  personal property of any kind not already listed." Id. at Schedule B. One day before

26  receiving a discharge, Plaintiff filed an adversary proceeding in the bankruptcy court, but

27  has never amended his schedules to add his claims against Defendants as an asset of the

28  estate. Id. Ex. K

United States District Court
For the Northern District of California

Wells Fargo relies on <u>Conrad v. Bank of America National Trust and Savings Ass'n.</u>, 45 Cal. App. 4th 133, 148 (1996), where the court analyzed several federal cases to conclude that a lender liability action was precluded where the plaintiff failed to identify the claims in the earlier bankruptcy action.  <u>See also Hay v. First Interstate Bank of Kalispell, N.A.</u>, 978 F.2d 555, 557 (9th Cir. 1992) (affirming summary judgment of debtor's claims against creditor where they were not disclosed in underlying bankruptcy case); <u>Hamilton v. State Farm Fire & Cas. Co.</u> 270 F.3d 778, 784 (9th Cir. 2001) ("We now hold that Hamilton is precluded from pursuing claims about which he had knowledge, but did not disclose, during his bankruptcy proceedings, and that a discharge of debt by a bankruptcy court, under these circumstances, is sufficient acceptance to provide a basis for judicial estoppel, even if the discharge is later vacated.").

Plaintiff does not dispute that he did not originally list his claims against Defendants on his bankruptcy schedules, and has not yet amended the schedules to include his claims at this time.  Instead, he counters that he is not judicially estopped from bringing this action because he can still amend his bankruptcy schedules as a matter of course because the case is not yet closed and Defendants have not shown bad faith or prejudice. <u>See</u> Fed. R. Bankruptcy Proc. 1009 ("A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed."); <u>In Re Magallanes</u>, 96 B.R. 253 (9th Cir. 1988) (amendment of exemption claims allowed if no bad faith or prejudice).  Plaintiff relies on cases where courts have allowed amendments to add exemptions in the absence of bad faith or prejudice, but does not cite any cases allowing an amendment to include an additional asset of the estate after discharge.

In its Reply, Wells Fargo cites <u>Oneida Motor Freight, Inc. v. United Jersey Bank</u>, 848 F.2d 414, 416 (3d Cir. 1998), where the court held that a debtor who failed to list a claim against its lender on its bankruptcy schedule was estopped from pursuing claims against the lender arising from that dispute.  The court emphasized the duty of bankruptcy filers to schedule all of their interests in property rights for the benefit of all creditors, and concluded that: "Although Oneida may be technically correct in its argument that it was

1   never *procedurally* compelled to raise its claim, we are satisfied that its failure to mention

2   this potential claim either within the confines of its disclosure statement or at any stage of

3   the bankruptcy court's resolution precludes this later independent action.  Even absent a

4   specific mandate to file a counterclaim, complete disclosure is imperative to assist

5   interested parties in making decisions relevant to the bankrupt estate."  Id.  This Court

6   concludes that principles of estoppel similarly bar Plaintiff's claims.

7        However, even if estoppel did not apply, each of Plaintiff's claims fail for multiple

8   additional reasons as discussed below.

9                   **2.    Plaintiff's Claims Are Preempted By HOLA**

10       Wells Fargo contends that all of Plaintiff's claims are completely preempted by

11   federal law and must be dismissed because World Savings Bank (renamed Wachovia

12   Mortgage FSB and later a division of Defendant Wells Fargo Bank N.A.) was a federally

13   chartered savings bank regulated by the Office of Thrift Supervision under the Home

14   Owners Loan Act ("HOLA"), 12 U.S.C. § 1461 *et seq.,* at the time the loan was made.  See

15   Wells Fargo's RJN Exs. A-E.  Pursuant to the Supremacy Clause, federal law preempts

16   state law "when federal regulation in a particular field is so pervasive as to make

17   reasonable the inference that Congress left no room for the States to supplement it."  Bank

18   of America v. City and County of San Francisco, 309 F.3d 551, 558 (9th Cir. 2002).  In the

19   field of banking, Congress has created "an extensive federal statutory and regulatory

20   scheme."  Id.  As part of this extensive federal scheme, Congress enacted HOLA during

21   the Great Depression.  Silvas v. E*Trade Mortgage Co., 514 F.3d 1001, 1004 (9th Cir.

22   2008).  The purpose of HOLA was to charter savings associations under federal law as a

23   means of restoring public confidence through a nationwide system of savings and loan

24   associations that are centrally regulated according to nationwide "best practices."  Id.

25   (citing Fidelity Fed. Saving and Loan Ass'n v. de la Cuesta, 458 U.S. 141, 160-61 (1982)).

26   Through HOLA, Congress gave the OTS broad authority to issue regulations governing

27   federal savings associations.  See 12 U.S.C. § 1464; Silvas, 514 F.3d at 1005.

28        Wells Fargo relies on 12 C.F.R. § 560.2 in support of its argument that the OTS

regulations establish that state laws do not apply to the lending practices of federal banks and thrifts and "occup[y] the entire field of lending regulation for federal savings associations." 12 C.F.R. § 560.2(a). That regulation provides that "federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or § 560.110 of this part." Id. Examples of credit activities that states may not regulate include "terms of credit, including amoritzation of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan," (§ 560.2(b)(4)) "[l]oan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees," (§ 560.2(b)(5)) "disclosure[s] and advertising," (§ 560.2(b)(9)) and "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." (§ 560.2(b)(10)). A state law of general applicability can be preempted by HOLA if, as applied, it falls under § 560.2(b). See Silvas, 514 F.3d at 1006; Munoz v. Fin. Freedom Senior Funding Corp., 567 F.Supp.2d 1156, 1160 (C.D.Cal.2008).

However, "[s]tate laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section: (1) Contract and commercial law; (2) Real property law; . . . (4) Tort law; (5) Criminal law; and (6) Any other law that OTS, upon review, finds: (I) Furthers a vital state interest; and (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section." Id. § 560.2(c). OTS has stated "that the purpose of paragraph (c) is to preserve the traditional infrastructure of basic state laws that undergird commercial transactions, not to open the door to state regulation of lending by federal savings associations." 61 Fed. Reg. 50951, 50966-50967.

"When analysing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis

United States District Court
For the Northern District of California

will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending.  If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted.  This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c).  For these purposes, paragraph (c) is intended to be interpreted narrowly.  Any doubt should be resolved in favor of preemption."  Id.

Wells Fargo argues that Plaintiff's third claim for fraudulent misrepresentation, fourth claim for fraudulent concealment, and sixth claim for unconscionability are based solely on allegations that it failed to properly disclose loan terms and improperly approved him for a loan (loan-origination allegations), and that such claims are preempted by section 560.2(b)(4), (5), (9), and (10).  Wells Fargo also contends that Plaintiff's first claim for wrongful foreclosure, second claim for failure to comply with pre-foreclosure notification requirements of Civil Code sections 2923.5 and 2924, and seventh claim for quiet title relate entirely to its allegedly improper foreclosure efforts and/or improper transfer of the deed to ETS, and that these claims relate to the "processing, origination, servicing [or] sale" of mortgages under 520.2(b)(10).  It contends that the fifth, eighth, ninth, and tenth claims, which are based on a combination of the loan-origination, improper transfer, and foreclosure procedure allegations are preempted as also falling within these categories.

Plaintiff counters that none of the state statutes he relies on are preempted because they do not regulate or otherwise effect Wells Fargo's credit activities, but he does not attempt to justify his non-statutory claims or allegations relating to loan origination or the deed of trust assignment.  The claims relying solely on loan-origination allegations (Claims 3, 4 and 6) and wrongful transfer of the deed (Claims 1 and 7) are preempted.

Plaintiff relies on Mabry v. Superior Court, 185 Cal. App. 4th 208, 231 (2010) for the position that his claims based on allegedly improper mortgage foreclosure procedure [*apparently claims 2, 5, 8, 9, and 10 but the Court should double check this with Plaintiff*], as set forth in California Civil Code § 2923.5, are not preempted by 12 C.F.R. § 560.2(b)(10).  However, Mabry limits this preemption determination by finding that relief

under § 2923.5 is limited to a postponement of foreclosure, not damages as claimed by

Plaintiff here.  Further, several federal district courts have concluded that § 2923.5 is

United States District Court

For the Northern District of California

preempted because the state law deals with contacting the borrower and requires a specific

declaration in the Notice of Default such that it falls "squarely within the scope of

HOLA's Section 560.2(b)(10), which deals with the '[p]rocessing, origination, servicing,

sale or purchase of, or investment or participation in, mortgages.'" Pinales v. Quality Loan

Service Corp., 2010 WL 3749427, *3 (S.D.Cal. 2010); see also Parcay v. Shea Mortgage,

Inc., 2010 WL 1659369, at *9 (E.D.Cal. Apr.23, 2010) (concluding that HOLA preempts

plaintiff's claim based on alleged violation of § 2923.5); Gonzalez v. Alliance Bancorp,

2010 U.S.Dist. LEXIS 47943, *15-16 (N.D.Cal. 2010); Murillo v. Aurora Loan Servs.,

LLC, 2009 WL 2160579, at *4 (N.D. Cal. July 17, 2009) (same); Stephan v. Wachovia,

World Savings, et al., 2009 U.S.Dist. LEXIS 113480 (N.D.Cal. 2009).  This Court has also

previously held that § 2923.5 is preempted by HOLA because the statutory notice

requirement "imposes a state law mandate about what information must be given to

borrowers, and includes a strict time frame for doing so.  Defendant would not be subject

to these requirements in other states.  Therefore, Plaintiffs' § 2923.5 claim concerns the

processing and servicing of Plaintiffs' mortgage and is preempted by HOLA."  Odinma v.

Aurora Loan Services, 2010 U.S.Dist. LEXIS 28347, *23-24 (N.D.Cal. 2010).  Following

the reasoning of these cases, Plaintiff's claims based on improper foreclosure procedure

are also preempted.

Plaintiff also argues that his §17200 claim is not preempted.  However, it is well-

settled that loan-origination disclosure and related claims that involve the activities listed

in section 560.2(b), including those brought under § 17200, are preempted.  See Silvas v.

E*Trade Mortg. Corp., 514 F.3d 1001, 1006 (9th Cir. 2008).  As discussed above,

Plaintiff's allegations – including those on which his § 17200 claim is based – relate

entirely to loan origination, transfer of the deed on the property, and/or foreclosure

procedure – all of which bear directly on lending activities listed in § 560.2(b) and are

therefore preempted.

Because each of Plaintiff's claims are directed to "disclosures," "terms of credit,"

"loan related fees," "disclosures and advertising," and/or "processing, origination,

1  servicing, sale or purchase" of mortgages, they are preempted by 12 C.F.R. § 560.2(b)(4),

2  (5), (9) and/or (10) and are dismissed.

### 3.   Failure to Tender Also Requires Dismissal of Claims 1 (Wrongful Foreclosure), 7 (Quiet Title) and 10 (Injunctive and Declaratory Relief)

5  Wells Fargo also argues that Plaintiffs' claims for wrongful foreclosure, quiet title,

6  and injunctive relief to prevent the foreclosure should be dismissed because Plaintiff has

7  not tendered or offered to tender. "A valid and viable tender of payment of the

8  indebtedness owing is essential to an action to cancel a voidable sale under a deed of

9  trust." Karlsen v. American Sav. & Loan Assn., 15 Cal.App.3d 112, 117 (1971); see also

10  Arnolds Management Corp. v. Eischen, 158 Cal.App.3d 575, 578 (1984) ("It is settled that

11  an action to set aside a trustee's sale for irregularities in sale notice or procedure should be

12  accompanied by an offer to pay the full amount of the debt for which the property was

13  security."). California district courts apply the tender rule in examining wrongful

14  foreclosure claims. Anaya v. Advisors Lending Group, 2009 WL 2424037, at *10 (E.D.

15  Cal. Aug. 3, 2009) ("Plaintiff offers nothing to indicate that she is able to tender her debt

16  to warrant disruption of non-judicial foreclosure"); Alicea v. GE Money Bank, 2009 WL

17  2136969, at *3 (N.D. Cal. July 16, 2009) ("When a debtor is in default of a home

18  mortgage loan, and a foreclosure is either pending or has taken place, the debtor must

19  allege a credible tender of the amount of the secured debt to maintain any cause of action

20  for foreclosure."); Montoya v. Countrywide Bank, 2009 WL 1813973, at * 11-12 (N.D.

21  Cal. June 25, 2009) ("Under California law, the 'tender rule' requires that as a

22  precondition to challenging a foreclosure sale, or any cause of action implicitly integrated

23  to the sale, the borrower must make a valid and viable tender of payment of the debt").

24  The application of the "tender rule" prevents "a court from uselessly setting aside a

25  foreclosure sale on a technical ground when the party making the challenge has not

26  established his ability to purchase the property." Williams v. Countrywide Home Loans,

27  1999 WL 740375, at *2 (N.D. Cal. Sept. 15, 1999); see also Benham v. Aurora Loan

28  Servs., C-09-2059 SC (N.D. Cal. Oct. 1, 2009) (granting a motion to dismiss a wrongful

1    foreclosure claim because the plaintiff failed to allege a credible tender offer).

2        "The rules which govern tenders are strict and are strictly applied."  <u>Nguyen v.</u>

3    <u>Calhoun</u>, 105 Cal.App.4th 428, 439 (2003). "The tenderer must do and offer everything

4    that is necessary on his part to complete the transaction, and must fairly make known his

5    purpose without ambiguity, and the act of tender must be such that it needs only

6    acceptance by the one to whom it is made to complete the transaction."  <u>Gaffney v.</u>

7    <u>Downey Savings & Loan Assn.</u>, 200 Cal.App.3d 1154, 1165 (1988) ("An offer of partial

8    payment is of no effect.") (internal quotation marks omitted).  The debtor bears

9    "responsibility to make an unambiguous tender of the entire amount due or else suffer the

10   consequence that the tender is of no effect." <u>Gaffney</u>, 200 Cal.App.3d at 1165; <u>see also</u>

11   <u>Aguilar v. Bocci</u>, 39 Cal. App. 3d 475, 478 (1974) (stating that a trustor cannot "quiet title

12   without discharging his debt.  The cloud upon his title persists until the debt is paid.  He is

13   entitled to remain in possession, but cannot clear his title without satisfying his debt.");

14   <u>Karlson</u>, 15 Cal.App.3d at 117 ("'. . . It is apparent from the general tenor of the decisions

15   that an action to set aside the sale, unaccompanied by an offer to redeem, would *not* state a

16   cause of action which a court of equity would recognize.'") (quoting <u>Leonard v. Bank of</u>

17   <u>America</u>, 16 Cal.App.2d 341, 344 (1936)).

18       Plaintiff's opposition does not state an ability or willingness to tender the amount

19   owed.  Instead, Plaintiff argues that the original note is "void," not voidable, and therefore

20   the tender rule does not apply.  For this position, Plaintiff relies on <u>Dimock v. Emerald</u>

21   <u>Properties</u>, 81 Cal. App. 4th 868, 878 (2000), which did not address the tender rule, but

22   held that a foreclosure sale by a former trustee, after a new trustee had been substituted in

23   and the substitution had been recorded, was void and not merely voidable.  Though not

24   entirely clear, Plaintiff's position appears to be that the assignment of the deed of trust to

25   ETS, or perhaps the transfer of the deed and note from World Savings to Wachovia to

26   Wells Fargo*,* was invalid under California statutory law and therefore the foreclosure is

27   void so the tender rule is inapplicable.

28       However, judicially noticeable documents reveal that the original lender, World

**United States District Court**
For the Northern District of California

1  Savings Bank, FSB, simply changed its name to Wachovia Mortgage, FSB, and is now a

2  division of Wells Fargo Bank, N.A., so transfers among those entities were proper.  See

3  Wells Fargo's RJN Exs. A-F.  Further, a notice of substitution of trustee substituting ETS

4  as the trustee for the deed of trust was recorded in 2008.  See id. Ex. M.  Therefore

5  Plaintiff's argument that the note is "void" based on improper transfers has no merit, and

6  Plaintiff cites no authority that would make the tender rule inapplicable under these

7  circumstances in any event.

8         Without citation, Plaintiff also argues that Defendants must produce an original

9  copy of the note in "wet ink."  Opp. at 5.  However, "California law does not require

10  possession of the note as a precondition to non-judicial foreclosure under a deed of trust."

11  See Putkkuri v. Recontrust Co., 2009 U.S. Dist. LEXIS 32 (S.D. Cal. Jan. 5, 2009)

12  ("Pursuant to section 2924(a)(1) of the California Civil Code, the trustee of Deed of Trust

13  has the right to initiate the foreclosure process.  Production of the original note is not

14  required to proceed with a non-judicial foreclosure."); see also Bouyer v. Countrywide

15  Bank, FSB, 2009 U.S. Dist. LEXIS 53940 at *23-24 (N.D. Cal. June 25, 2009) ("Courts

16  have repeatedly held that California's nonjudicial foreclosure statutes are comprehensive

17  and have refused to impose requirements not found in the statute"); Gentsch v. Ownit

18  Mortg. Solutions, Inc., 2009 U.S. Dist. LEXIS 45163 at *13-15 (E.D. Cal. May 14, 2009);

19  I.E. Assocs. v. Safeco Title Ins. Co., 39 Cal. 3d 281, 285 (1985) (noting that California's

20  nonjudicial foreclosure statutes are comprehensive and holding that possession of original

21  promissory note is not required to initiate non-judicial foreclosure).  Therefore this

22  argument does not help Plaintiff.

23         Because Plaintiff has not shown that the note or deed is "void," and has not

24  indicated a willingness or ability to tender the amount owed, Plaintiff's first, seventh and

25  tenth causes of action are dismissed on this basis as well.

26              **4.    Plaintiff's Other Claims Fail For Additional Reasons**

27                    **1.    Claim 2 For Violation of California Civil Code § 2923.5**

28

**United States District Court**
For the Northern District of California

1       California Civil Code § 2923.5(a)(1) states that "A mortgagee, [etc.] may not file a

2  notice of default pursuant to Section 2924 until 30 days after initial contact is made as

3  required by paragraph (2) or 30 days after satisfying the due diligence requirements . . . ."

4  Cal. Civ. Code § 2923.5(a)(1).  Paragraph (2) also specifies the type of initial contact that

5  is required (including exploring options to avoid foreclosure) before filing the notice of

6  default.  See Cal. Civ. Code § 2923.5(a)(2).  Wells Fargo argues that Plaintiff has failed to

7  state a claim under California Civil Code § 2923.5 because the only remedy available is

8  postponement of foreclosure, and Plaintiff does not seek this remedy.  See Compl. ¶¶ 30-

9  38; Mabry v. Superior Court, 185 Cal. App. 4th 208, 225-26, 231-32 (2010).

10       In his opposition, Plaintiff argues that Mabry was wrongly decided and is "likely to

11  fall" based on a petition for review filed in July 2010.  However, that petition for review

12  was denied months before Plaintiff's opposition was filed, so this argument is without

13  merit.  See Mabry v. Superior Court, 2010 Cal. LEXIS 8134 (Aug. 18, 2010) (petition for

14  review denied).  Because Plaintiff's complaint does not seek postponement of the

15  foreclosure proceedings to allow time for compliance with § 2923.5, this claim is also

16  dismissed on this basis.

17       **2.**     **Claim 3 (Fraudulent Misrepresentation), Claim 4 (Fraudulent**
                   **Concealment) and Claim 5 (Conspiracy to Defraud and Convert)**
18                **Also Fail**

19        To establish a cause of action for fraudulent misrepresentation, Plaintiff must plead

20  and prove four elements: (1) a knowingly false representation by Defendant; (2) an intent

21  to deceive or induce reliance; (3) justifiable reliance by Plaintiffs; and (4) resulting

22  damages.  Guiterrez v. Wells Fargo Bank, 2009 WL 322915, at *4 (N.D. Cal. Feb. 9,

23  2009) (citing Service by Medallion, Inc. v. Clorox Co., 44 Cal.App.4th 1807, 1816

24  (1996)).  To establish a cause of action for fraudulent concealment, Plaintiff must plead

25  and prove five elements: (1) Defendant must have concealed or suppressed a material fact;

26  (2) Defendant must have been under a duty to disclose the fact to the plaintiff; (3)

27  Defendant must have intentionally concealed or suppressed the fact with the intent to

28  defraud the plaintiff; (4) Plaintiffs must have been unaware of the fact and would not have

United States District Court
For the Northern District of California

1  acted as he did if he had known of the concealed or suppressed fact; and (5) as a result of

2  the concealment or suppression of the fact, the plaintiff must have sustained damage. Id.

3  (citing Marketing West, Inc. v. Sanyo Fisher (USA) Corp., 6 Cal.App.4th 603, 612-13

4  (1992)).

5  　　　Wells Fargo moves to dismiss Plaintiff's fraud-related claims on a number of bases.

6  First, it points out that the claims are time-barred because they are based on alleged actions

7  that occurred during the origination of the loan in 2006 but the complaint was not brought

8  until 2010. See Cal. Code Civ. P. § 338(d) (three year statute of limitation for fraud

9  claims). Plaintiff does not address this argument in opposition and the Court finds that the

10  fraud-related claims should also be dismissed as time-barred.

11  　　　Second, Wells Fargo argues that the fraud-related claims have not been pled with

12  the level of specificity required by Rule 9(b), and Plaintiff does not address this argument

13  or attempt to justify the specificity of these claims. Rule 9(b) requires that "[i]n all

14  averments of fraud or mistake, the circumstances constituting fraud or mistake shall be

15  stated with particularity." Fed. R. Civ. P. 9(b); Vess v. Ciba-Geigy, Inc., 317 F.3d 1097,

16  1106 (9th Cir. 1997) ("Rule 9(b) demands that, when averments of fraud are made, the

17  circumstances constituting the alleged fraud "be 'specific enough to give defendants notice

18  of the particular misconduct ... so that they can defend against the charge and not just deny

19  that they have done anything wrong.'" Averments of fraud must be accompanied by "the

20  who, what, when, where, and how" of the misconduct charged.") (internal citations

21  omitted).

22  　　　Plaintiff's allegations of fraud are not pled with particularity. Plaintiff has not

23  alleged any specific information about who made misrepresentations, when those

24  misrepresentations were made or the content of form of the statements. Plaintiff does not

25  allege which facts were material, which were and were not disclosed to them, which

26  Defendant concealed which facts, and which Defendant had a duty to disclose those facts

27  to them. Therefore, the fraud and conspiracy to defraud claims are dismissed on this basis

28  as well.

**United States District Court**
For the Northern District of California

### 3.   Claim 9 (Conversion) Also Fails

Plaintiff's conversion claim is based on allegations of fraud, which have not been pled with the required specificity as discussed above. See Montoya v. Countrywide Bank, FSB, 2009 U.S. Dist. LEXIS 53920, *23 (N.D. Cal. 2009) ("Plaintiffs' conversion allegations fail to allege facts that make it plausible that Defendants exercised dominion over Plaintiffs' personal property in manner that was inconsistent with Plaintiffs' rights at the time. Plaintiffs' claim is premised on a fraudulently obtained loan by Defendants. However, as discussed above, Plaintiffs have not adequately alleged any causes of action sounding in fraud."). Instead of defending the sufficiency of his allegations supporting conversion, Plaintiff simply argues that he needs discovery in order to have facts to support this claim. See Opp. at 8. This argument does nothing to save this claim.

In his opposition, Plaintiff also appears to demand an accounting based on this claim, though he did not seek such relief in his Complaint. An accounting is a "'species of disclosure, predicated upon the plaintiff's legal inability to determine how much money, if any, is due.'" Teselle v. McLoughlin, 173 Cal.App.4th 156, 180 (2009) (quoting 1A Corpus Juris Secundum, Accounting, § 6, ¶. 7-8, fn. omitted). "[T]he purpose of the accounting is, in part, to discover what, if any, sums are owed to the plaintiff, and an accounting may be used as a discovery device." Teselle, 173 Cal.App.4th at 180. Here, however, it is undisputed that Plaintiff defaulted on the loan so it appears that Plaintiff owes money to Defendants and not the other way around. Further, there are no allegations, other than conclusory ones, that the loan or Wells Fargo's procedures are so complicated that an accounting is necessary. Therefore Plaintiff's request for an accounting, to the extent the opposition can be construed as such, is denied.

### 4.   Claim 6 (Unconscionability) Is Not a Claim

Wells Fargo correctly contends that Plaintiff's sixth claim for unconscionability under California Civil Code section 1670.5 is a defense to the enforcement of a contract, not an affirmative claim. See Dean Witter Reynolds, Inc. v. Superior Court, 211 Cal. App. 3d 758, 766 (1989) (holding that there is no affirmative cause of action created by section

United States District Court
For the Northern District of California

1  1670.5).  Further, as there is no statute of limitations for the claim of "unconscionability,"

2  it would be governed by the four-year catch-all limitations period codified in California

3  Code of Civil Procedure section 339(1).  Since the claim is based entirely on loan-

4  origination allegations dating back to June 2006 and the complaint was not brought until

5  August 2010, it would necessarily be time-barred.  On these bases, the sixth claim is

6  dismissed.

7  **5.      Plaintiff Does Not State a Valid UCL Claim**

8          Not only should Plaintiff's eighth claim for violation of California Business &

9  Professions Code section 17200 be dismissed because it is preempted as applied in this

10  case, it should also be dismissed because Plaintiff fails to state a claim with the requisite

11  specificity.  Section 17200 prohibits "any unlawful, unfair or fraudulent business act or

12  practice.  This cause of action is derivative of some other illegal conduct or fraud

13  committed by a defendant, and a plaintiff must state with reasonable particularity the facts

14  supporting the statutory elements of the violation."  <u>Lomboy v. SCME Mortgage Brokers</u>,

15  2009 WL 1457738, at *7 (N.D. Cal. May 26, 2009).

16          Here, Plaintiff's 17200 claim is not sufficiently particular to satisfy the pleading

17  standards.   For example, Plaintiffs do not distinguish between Defendants with respect to

18  the conduct alleged.  Plaintiff also alleges that Defendants made improper disclosures, but

19  fails to allege any particular facts to support that claim.  Plaintiff's opposition simply

20  summarizes the conclusory allegations of his complaint and does not otherwise attempt to

21  explain how the claim is properly pled.  The opposition also does not counter Wells

22  Fargo's persuasive point that, to the extent the claim is based on loan-origination

23  allegations, it is time-barred by the applicable four-year statute of limitations.

24  Accordingly, the sixth claim should be dismissed for failure to state a claim.

25  **6.      Claim 10 (Declaratory and Injunctive Relief) Should Be
Dismissed**

26

27          In addition to requesting dismissal based on Plaintiff's failure to indicate an ability

28  or willingness to tender, Wells Fargo moves to dismiss Plaintiff's tenth claim for

**United States District Court**
For the Northern District of California

1  declaratory and injunctive relief on other grounds.

2  With respect to declaratory relief, Wells Fargo argues that this claim seeks a

3  declaration of matters already alleged elsewhere in his complaint and should be dismissed

4  because it is superfluous and subsumed within Plaintiffs' other claims.  See Mangindin v.

5  Washington Mut. Bank, 637 F. Supp. 2d 700, 707-08 (N.D. Cal. 2009) ("A claim for

6  declaratory relief is unnecessary where an adequate remedy exists under some other cause

7  of action.").  In Mangindin, Judge Ware dismissed the plaintiff's declaratory relief claim

8  as duplicative and unnecessary because the claim, which sought a declaration that the

9  defendants had no right to foreclose, was "entirely commensurate with the relief sought

10  through the other causes of action."  Further, "an actual, present controversy must be

11  pleaded specifically" and "the facts of the respective claims concerning the [underlying]

12  subject must be given."  City of Cotati v. Cashman, 29 Cal.4th 69, 80 (2002).  Here,

13  Plaintiff has failed to state any claims, so there is no actual and present controversy.

14  Further, there has been no showing as to how the declaratory relief claim is not duplicative

15  of other claims in this case.  Accordingly, the declaratory relief claim is dismissed.

16  With respect to the injunctive relief claim, Wells Fargo correctly points out that

17  injunctive relief is a remedy, not a claim.  Further, to the extent that Plaintiffs have not

18  otherwise stated a claim for relief against these Defendants, they are not entitled to

19  injunctive relief.  Accordingly, the tenth claim is also dismissed.

20  **VI.    Defendant's Motion To Strike**

21  Wells Fargo moves to strike all of the punitive damages claims from Plaintiff's

22  complaint, as well as certain allegations relating to Plaintiff's UCL claim and an un-pled

23  Unfair Debt Collection Practices Act claim.[3]  Because all of Plaintiff's claims are

24  //

25  //

26  //

27

28      [3]Plaintiff claims punitive damages for each of his claims except for the quiet title and injunctive/declaratory relief claims based on Defendants' alleged malice, fraud, and or oppression.  See Compl. ¶¶ 29, 38, 49, 51, 55, 67, 79, 88, 91; Prayer ¶¶ 4, 9, 11.

DISMISSED WITH PREJUDICE, the Court need not rule on this motion and it is

DENIED AS MOOT.

**IT IS SO ORDERED.**

Dated: October 27, 2010

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge

**United States District Court**
For the Northern District of California